IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DEBRA L. HUGHES,                      )
                                      )
                    Plaintiff,        )
                                      )
vs.                                   )      Case No. 06-1050-WEB
                                      )
JO ANNE B. BARNHART,                  )
COMMISSIONER OF                       )
SOCIAL SECURITY,                      )
                                      )
                    Defendant.        )
_____)



RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.  The
matter has been fully briefed by the parties and has been referred
to this court for a recommendation and report.

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner as
to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision

1

to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

2

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability

3

to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence.

4

Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

Administrative law judge (ALJ) Keith L. Stanley issued his decision on October 19, 2005 (R. at 15-23).  At step one, the ALJ found that plaintiff had not performed substantial gainful activity since August 26, 2003 (R. at 15-16).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease and affective disorders (R. at 18).  At step three, the ALJ found that plaintiff's impairments did not meet or equal a listed impairment (R. at 18-19).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff could perform past relevant work (R. at 21-22).  Therefore, the ALJ concluded that plaintiff was not disabled.

**I.  Did the ALJ err in his analysis of the opinions of Dr. Bazzano, a treating physician?**

The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion

5

of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to

support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

In his decision, the ALJ provided the following explanation for the weight given to the opinions of Dr. Bazzano:

> Dr. Stephen Bazzano's opinions regarding the claimant's ability to work in his Physical Residual Functional Capacity Questionnaire dated December 2004, (Exhibit 10F, pp. 12-13) are not supported by well documented medical evidence, treatment records, or statements of the claimant regarding her daily activities and physical abilities. (SSR 96-2p) The doctor's assessments are not consistent with the claimant's over-all medical record which indicates improvement with treatment.
>
> The doctor estimated the claimant could lift and carry 10 pounds and stand and walk less than one hour total in an 8 hour workday. He further opined that the claimant could sit 4 hours total and one hour continuously in an 8 hour work day. He opined the claimant needed to lie down or recline 4 times during an 8 hour work day for 30 minutes each time.
>
> The undersigned gives little weight to the opinions of Dr. Bazzano regarding the

7

claimant's limitations. The doctor does not
have a long-term relationship with the
claimant, having first examined the claimant
on November 1, 2004. The undersigned also
gives little weight to the opinions regarding
the claimant's limitations because the answers
in the Physical Residual Functional Capacity
Questionnaire are based upon the claimant's
subjective complaints. The doctor was aware
that the form had come from the claimant's
attorney who gave it to the claimant for the
physician to fill out for disability purposes.
Treatment notes and objective findings in the
claimant's record do not support the doctor's
severe limitations. Dr. Bosanno's opinions are
not a genuine assessment for medical treatment
purposes.

(R. at 18).

First, the ALJ asserted that Dr. Bazzano did not have a long-
term relationship with the claimant, having first examined the
plaintiff on November 1, 2004 (R. at 18).  This is clearly an
inaccurate representation of the medical records provided by Dr.
Bazzano.  His records show that Dr. Bazzano was sent radiological
reports dated August 26, 2003 which showed bulging of the lumbar
disks and vacuum disk phenomenon with associated degenerative disk
disease at L5-S1 (R. at 185-186).  The records also show visits by
the plaintiff to Dr. Bazzano's office on May 17, 2004, June 16,
2004, November 1, 2004, November 8, 2004, December 6, 2004,
January 10, 2005, February 17, 2005, April 28, 2005, June 15,

8

2005, and July 25, 2005 (R. at 178, 179, 263, 264, 265, 266, 267, 268, 269, 272).  Thus, Dr. Bazzano's medical records clearly demonstrate a treatment relationship for nearly two years and 10 office visitations from May 17, 2004 through July 25, 2005.  The court finds that the ALJ erred by relying on an invalid basis for giving the opinions of Dr. Bazzano little weight.

Furthermore, the ALJ stated that the RFC opinions of Dr. Bazzano were based upon plaintiff's subjective complaints, that the treatment notes and objective findings in plaintiff's record do not support the doctor's severe limitations, and that his opinions are not a genuine assessment for medical treatment purposes (R. at 18).  In the case of <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." <u>Id</u>. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence

9

and *not due to his or her own credibility judgments, speculation or lay opinion.*" <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

More recently, in the case of <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. <u>See</u> <u>Langley</u>, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report.[FN3] His April 3, 2001 statement might well have been based on his recent first-hand examination and observation of claimant during this examination, performed less than two weeks earlier, rather than on claimant's subjective complaints, as the ALJ speculated. <u>See</u> <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir.2000) (noting that the treating physician's opinion may "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

121 Fed. Appx. at 823-824.

Nothing in Dr. Bazzano's records, including his RFC assessment, indicate that his opinions were based on plaintiff's subjective complaints.  In fact, Dr. Bazzano's records include radiological reports noting objective findings as set forth above. Furthermore, as in <u>Victory</u>, the opinions of Dr. Bazzano may have been based on examinations and observations of the plaintiff during the numerous office visits by the plaintiff.  Therefore, the court finds that the ALJ's conclusion that Dr. Bazzano's opinions are based on plaintiff's subjective complaints is not supported by the evidence in this case.

The ALJ also noted that the RFC assessment form came from plaintiff's attorney who gave it to the plaintiff for Dr. Bazzano to fill out.  First, it is not at all clear from the testimony of plaintiff or her attorney how the form was given to Dr. Bazzano (R. at 308-309).  Second, and more important, it is completely irrelevant to an analysis of the weight to be given to the opinions expressed on the form that the form may have been provided by plaintiff's attorney.[1]

_____

[1]Defendant, in her brief, offers various rationales which might support the findings of the ALJ regarding the weight to be

11

The court would also note that the ALJ, in his decision,
argued that the medical treatment notes and objective findings in
the medical record did not support Dr. Bazzano's RFC findings.  In
the case of Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th
Cir.2004), the court held that if the ALJ concluded that the
treating physician had failed to provide sufficient support for
his conclusions about claimant's limitations, the severity of
those limitations, or the effect of those limitations on her
ability to work, the ALJ should have recontacted the treating
physician for clarification of his opinion before rejecting it.
20 C.F.R. 404.1512(e) applies not only to treating physicians or
psychologists, but also to other medical sources.  Although this

---

given to the opinions of Dr. Bazzano (Doc. 10 at 11-12, 13, 15).
However, these rationales are not contained in the ALJ's decision.
An ALJ's decision should be evaluated based solely on the reasons
stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084
(10th Cir. 2004).  A decision cannot be affirmed on the basis of
appellate counsel's post hoc rationalizations for agency action.
Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A
reviewing court may not create post-hoc rationalizations to
explain the Commissioner's treatment of evidence when that
treatment is not apparent from the Commissioner's decision.
Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By
considering legal or evidentiary matters not considered by the
ALJ, a court risks violating the general rule against post hoc
justification of administrative action.  Allen v. Barnhart, 357
F.3d 1140, 1145 (10th Cir. 2004).

issue was not raised by plaintiff in her brief, because this case is being remanded, the ALJ should give serious consideration to recontacting Dr. Bazzano in accordance with 20 C.F.R. § 404.1512(e).

## II.  Did the ALJ err in his RFC findings?

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial

13

evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785

(10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently

articulated so that it is capable of meaningful review; the ALJ is

charged with carefully considering all of the relevant evidence

and linking his findings to specific evidence.  Spicer v.

Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It

is insufficient for the ALJ to only generally discuss the

evidence, but fail to relate that evidence to his conclusions.

Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618

(10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p

because he has not linked his RFC determination with specific

evidence in the record, the court cannot adequately assess whether

relevant evidence supports the ALJ's RFC determination.  Such bare

conclusions are beyond meaningful judicial review.  Brown v.

Commissioner of the Social Security Administration, 245 F. Supp.2d

1175, 1187 (D. Kan. 2003).

        The ALJ, in setting forth his RFC findings, provided no

explanation of the basis for his findings other than to state that

they are based on "a review of the record" and "all of the

relevant evidence in the case record" (R. at 21).  In the case of

Kency v. Barnhart, Case No. 03-1190-MLB (D. Kan. Nov. 16, 2004),

the court held as follows:

> ...the ALJ simply listed all the evidence
> contained in the record and then set forth his
> conclusion without explaining the
> inconsistencies and ambiguities contained in
> the opinions. He did not connect the dots, so
> to speak, as is required by S.S.R. 96-8p. It
> may well be that upon remand, the ALJ will
> reach the same conclusion. Nevertheless,
> S.S.R. 96-8p is defendant's requirement and
> ALJs presumably are the experts whose
> responsibility it is to know and follow
> defendant's requirements...
>
> Most important, the ALJ must explain how the
> decision was reached. When an ALJ merely
> summarizes the facts, notes that he has
> considered all of the facts, and then
> announces his decision, there is nothing for
> the court to review. The court cannot know how
> the ALJ analyzed the evidence. When the
> evidence is contradictory or ambiguous, as it
> is in most cases, the court cannot know which
> evidence was given what weight, or how the
> ambiguities were resolved. Therefore, to
> determine whether substantial evidence
> supports the conclusion, the court would have
> to reweigh the evidence. Since that option is
> precluded by law, the court can only remand to
> the defendant for a proper explanation of how
> the evidence was weighed and ambiguities
> resolved.

Kency, (D. Kan. Nov. 16, 2004, Doc. 21 at 7, 9); see also Wolfe v.

Barnhart, Case No. 05-1028-JTM (Doc. 25 at 3, July 25, 2006)("It

is insufficient for the ALJ to generally discuss the evidence but

fail to relate the evidence to his conclusions").  For this

reason, the case must be remanded in order for the ALJ to comply with SSR 96-8p.

In his mental RFC findings, the ALJ stated that, due to depression and moderately impaired cognition, plaintiff should do job tasks that are simple, routine, and repetitive (R. at 21). However, no explanation was offered for that finding.  Earlier in his decision, the ALJ stated that plaintiff was diagnosed with a GAF score of 49 on May 24, 2004 (R. at 17, 203-204), but that following therapy and the use of Zoloft, a medical record dated August 26, 2004 reflected that plaintiff seemed to be doing much better with the Zoloft (R. at 17, 255).

What the ALJ failed to mention is that the record reflects numerous GAF scores, as follows:

        May 24, 2004:    49 (R. at 203, 245)
        Aug. 20, 2004:   51 (R. at 207)
        Nov. 10, 2004:   49 (R. at 252)
        Feb. 8, 2005:    49 (R. at 252)
        May 5, 2005:     49 (R. at 252)
        Aug. 4, 2005:    49 (R. at 252)[2]

---

[2]The above scores indicate the following:
        51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

Therefore, the record shows that her GAF score, with one
exception, remained at 49 from May 24, 2004 through August 4,
2005.  An ALJ cannot impermissibly ignore the evidence as a whole
while choosing instead to abstract selective pieces of evidence
favorable to their position.  See O'Connor v. Shalala, 873 F.
Supp. 1482, 1491 (D. Kan. 1995); Jones v. Sullivan, 804 F. Supp.
1398, 1406 (D. Kan. 1992); Claassen v. Heckler, 600 F. Supp. 1507,
1511 (D. Kan. 1985).  An ALJ, in addition to discussing the
evidence supporting his decision, must also discuss the
uncontroverted evidence he chooses not to rely upon, as well as
significantly probative evidence he rejects.  Clifton v. Chater,
79 F.3d 1007, 1009-1010 (10th Cir. 1996); see Grogan v. Barnhart,
399 F.3d 1257, 1266 (10th Cir. 2005).  The ALJ cannot ignore
evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp.
1413, 1420 (D. Kan. 1995).  Therefore, on remand, the ALJ should

----

41-50: **Serious symptoms** (e.g., suicidal
ideation, severe obsessional rituals, frequent
shoplifting), **OR any serious impairment in
social, occupational, or school functioning**
(e.g., no friends, unable to keep a job)
(emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)
(4th ed., text revision, American Psychiatric Association 2000 at
34).

17

take into consideration all of the GAF scores in his analysis of the limitations resulting from plaintiff's severe mental impairment.

**III.  Did the ALJ err in his step four analysis?**

At step four, the ALJ is required by social security ruling (82-62) to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity.  <u>Henrie v. United States Department of HHS</u>, 13 F.3d 359, 361 (1993).  At each of these three phases, the ALJ must make specific findings.  <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).[3]  An ALJ can comply with these requirements

---

[3] In <u>Winfrey</u>, the court noted that the Secretary glossed over the absence of the required ALJ findings by relying on the testimony of the vocational expert (VE) that plaintiff could meet the mental demands of his past relevant work, given his mental limitations as found by the ALJ.  The court stated that this practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged.  The court went on to say as follows:

> Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review.  When, as here, the ALJ makes findings only about the claimant's limitations, and the

18

if he quotes the VE's testimony with approval in support of his
own findings at phases two and three of the step four analysis.
Doyal v. Barnhart, 331 F.3d 758, 760-761 (10th Cir. 2003).  At the
second phase of the step four analysis, the ALJ must make findings
regarding the physical and mental demands of the claimant's past
relevant work.  When the ALJ essentially skips the second phase of
the step four analysis by not making any findings regarding the
physical and mental demands of claimant's past work, either as
performed or as it is generally performed in the national economy,
then the case shall be remanded in order for the ALJ to make the
specific factual findings regarding the demands of claimant's past
relevant work.

------------

        remainder of the step four assessment takes
        place in the VE's head, we are left with
        nothing to review...a VE may supply
        information to the ALJ at step four about the
        demands of the claimant's past relevant
        work...[but] the VE's role in supplying
        vocational information at step four is much
        more limited than his role at step
        five...Therefore, while the ALJ may rely on
        information supplied by the VE at step four,
        the ALJ himself must make the required
        findings on the record, including his own
        evaluation of the claimant's ability to
        perform his past relevant work.

Winfrey, 92 F.3d at 1025.

Clardy v. Barnhart, 2004 WL 737486 at *6 (D. Kan. Apr. 5, 2004).

At step four, the ALJ found that, according to the vocational expert's (VE) testimony, plaintiff can return to the type of unskilled work she performed in the past in her former jobs of embroidery machine operator, convenience store clerk, shrink wrap operator, and production worker, as generally performed in the national economy (R. at 22).  When making his step four findings, the ALJ did not make any findings as to the mental and physical demands of plaintiff's past relevant work, relying simply on the vocational expert's testimony that she could perform her past relevant work.  Winfrey is clear that, although the ALJ may rely on information supplied by the VE, the ALJ is required to make the required findings on the record.  Therefore, on remand, the ALJ shall comply with the requirements of SSR 82-62 and the case law when making his findings at step four.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. §

20

636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule

72.1.4, the parties may serve and file written objections to the

recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on December 12, 2006.


                        s/John Thomas Reid
                        JOHN THOMAS REID
                        United States Magistrate Judge